# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

**TMS INTERNATIONAL, LLC**                                                                 **PLAINTIFF**

v.                              **CASE NO. 3:25-CV-00103-BSM**

**EDW. C. LEVY CO.,** *et al.*                                                             **DEFENDANTS**

## ORDER

TMS International, LLC's amended motion for a preliminary injunction [Doc. No. 56] is granted in part and denied in part, and its motion for a preliminary injunction [Doc. No. 9] is denied as moot. TMS's motion to enjoin Edward C. Levy Company from soliciting TMS employees who have non-compete agreements is granted. Levy is also enjoined from employing former TMS employees who have non-compete agreements within one year of their separation from TMS. TMS's motion to enjoin Patrick Stevenson, Chad Metheny, and Joshua Kimery from working for Levy; from soliciting TMS employees; and from violating their nondisclosure obligations is denied. TMS's motion for a declaration addressing the validity of its covenants with Stevenson, Metheny, and Kimery is denied at this phase of the case but will be ruled on after a trial.

## I. BACKGROUND

When Stevenson, Metheny, and Kimery accepted positions as operations supervisors at TMS, they signed contracts with non-compete clauses providing that neither could accept positions with TMS's competitors within one year of the day they leave the employment of TMS. Stevenson resigned from TMS on February 7, 2025; Metheny resigned on November

5, 2024, and Kimery resigned in September 2023. All three immediately began working for Levy, TMS's direct competitor. TMS sent cease-and-desist letters to all defendants but those letters were essentially ignored. Stevenson and Kimery continue to work at Levy but Metheny now works for another company.

TMS is seeking a preliminary injunction against all defendants requesting (1) an order prohibiting Stevenson, Metheny, and Kimery from working for Levy for a six-month period, soliciting TMS employees, or violating their nondisclosure agreements; (2) an order prohibiting Levy from soliciting and/or employing TMS employees who are subject to TMS's non-compete agreements; and (3) a declaration that the restrictive covenants set out in the employment contracts of Stevenson, Metheny, and Kimery are valid and enforceable.

## II. LEGAL STANDARD

A preliminary injunction is an extraordinary remedy. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008). Whether to grant such relief is within the sound discretion of the district court. *See Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006). A party seeking a preliminary injunction must prove that: (1) it will suffer irreparable harm if the injunction is denied; (2) the harm to the movant, if the injunction is denied, outweighs the harm to the non-movant if the injunction is granted; (3) there is a likelihood of success on the merits; and (4) an injunction is in the public's interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981); *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

III.  DISCUSSION

Although I favor enforcing covenants not to compete, TMS's motion for preliminary injunction against Stevenson, Metheny, and Kimmery is denied because TMS has failed to meet its burden on the first and second elements set forth above.  TMS's motion for preliminary injunction is, however, granted against Levy and Levy is enjoined from soliciting TMS employees who have non-compete agreements and from employing former TMS employees who have non-compete agreements within one year of their separation from TMS.

A.      Former Employees

*1. Work at Levy*

TMS's motion to enjoin Stevenson, Metheny, and Kimery from working at Levy is denied because it has not shown that it will suffer irreparable harm if the motion is denied or that the harm it will suffer outweighs the harm to defendants if the motion is denied.

a. Irreparable Harm

TMS will not suffer irreparable harm if Stevenson, Metheny, and Kimery are not enjoined from working at Levy.  This decision rests to a large degree on the timing of TMS's motion and the fact that Kimery and Metheny have already been separated from its employment for more than a year and Stevenson will reach his one-year anniversary in a matter of days.

Although TMS argues that irreparable harm manifests anytime a former employee violates a covenant not to compete, this is not convincing.  *See* Ark. Code Ann. § 4-75-101(e)(2) ("immediate harm associated with the breach of a covenant not to compete

agreement shall be considered irreparable to establish the appropriateness of a preliminary injunction"). As an initial matter, district courts in the Eighth Circuit have routinely found that irreparable harm is ultimately determined by federal law, not state law. *See, e.g., Moeschler v. Honkamp Krueger Fin. Serv., Inc.*, No. 21-CV-0416-PJS-DTS, 2021 WL 4273481, at * (D. Minn. Sept. 21, 2021) (state law inferring irreparable harm from breach of restrictive covenant did not require finding of irreparable harm). Moreover, the statute does not require a finding of irreparable harm. *See Porter's Comm. Refrigeration, Inc v. Brewer*, 688 S.W.3d 145, 148 (Ark. Ct. App. 2024) (explaining that there still must immediate harm associated with the breach) (citations omitted). The Pennsylvania cases cited by TMS are also not convincing on this point.

The record does not show that TMS will, in fact, suffer irreparable harm if Stevenson, Metheny, and Kimery are not enjoined from working at Levy. First, Kimery and Metheny are already more than one year removed from their employment at TMS, and Stevenson will reach his one year anniversary in the next several days. Second, TMS filed its motion for a preliminary injunction more than a year after finding out that Kimery was working for Levy. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) (delay may weigh against finding of irreparable harm). Third, Metheny no longer works for Levy and the record does not show that he plans to return to Levy. Fourth, but less significant, is that although TMS argues that Stevenson and Kimery had access to its sensitive and confidential information, the hearing testimony does not support that argument or support the view that either is familiar with or has the ability to use any sensitive information at Levy. *See*

4

*Progressive Tech. v. Chaffin Holdings, Inc., et al.*, E.D. Ark. No. 4:20-CV-132-BSM (granting preliminary injunction when plaintiff's business depended almost exclusively on the relationships that defendant built over many years, and plaintiff lost contracts within days of defendant's breach of the non-compete agreement), *aff'd*, No. 20-1474, 2020 WL 4060477 (8th Cir. July 10, 2020). Fifth, although TMS asserts that it shared proprietary software with Stevenson, Metheny, and Kimery, the hearing testimony showed that TMS has already licensed that software to Levy. Consequently, neither Stevenson, Metheny, nor Kimery have information about the software that Levy does not already have.

     b. Balance of the Harms

Although I am very sympathetic to TMS's position, given the time lapse between the dates that each former employee left TMS and the date of this order, the harm that Stevenson, Metheny, and Kimery will suffer if I grant TMS's motion clearly outweighs the harm to TMS if I deny the motion. Due to this time lapse and the other four factors set forth above, the record does not show that TMS is at risk of being harmed by these former employees. Based on the hearing testimony, however, Stevenson and Kimery will be greatly harmed if they are enjoined from working at Levy. This is based on the poor economic environment in Mississippi County, the former employees' limited education, and the family circumstances about which they testified.

                                2. *Non-Solicitation & Nondisclosure Obligations*

TMS's motion to enjoin Stevenson, Metheny, and Kimery from soliciting TMS employees or violating their nondisclosure obligations is denied because of the lapse in time

addressed above and because TMS has failed to show that Stevenson, Metheny, or Kimery are actively soliciting its employees. *See Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) (party must show future violation that is more than a mere possibility). Because TMS has failed to demonstrate a likelihood of success on the merits or irreparable harm, the remaining factors are not addressed. *Gelco Corp.*, 811 F.2d at 420 (if there is no showing of irreparable harm, the inquiry is finished).

    B.    <u>Levy</u>

TMS's motion to enjoin Levy from soliciting and/or employing its employees with non-compete agreements is granted and Levy is enjoined from soliciting TMS employees who have non-compete agreements and from employing former TMS employees having non-compete agreements within one year of their separation from TMS.

*1. Irreparable Harm*

TMS will suffer irreparable harm if Levy continues to solicit and/or employ its employees with non-compete agreements.

The record shows that Levy is soliciting and employing TMS employees in violation of their non-compete agreements. Such employees are scarce in Mississippi County, and the steel mill industry is highly competitive in Northeast Arkansas. Levy's hiring of TMS employees who are subject to non-compete agreements threatens TMS's ability to retain its senior trained employees, maintain customer goodwill, and successfully bid on contracts, each of which can produce up to one billion dollars in revenue. At first glance, it appears that this issue can be resolved by money damages, but in actual practice, it cannot. Because

6

of the shortage in trained labor, TMS's survival is being threatened by Levy's actions. Indeed, TMS and Levy bid on many of the same contracts in the same locations in Northeast Arkansas, and the turnover rate in companies providing steel mill services is quite high. Importantly, Levy has not given any indication that it intends to cease poaching TMS employees who are subject to non-compete agreements. Moreover, a denial of TMS's request would require it to file a separate lawsuit every time Levy hires another obligated employee. *See N.I.S. Corp v. Swindle*, 724 F.2d 707 (8th Cir.1984); *Med. Shoppe Int'l v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (loss of intangible assets such as reputation and goodwill constitute irreparable injury even though they are difficult to quantify). That is not practical.

## 2. Balance of the Harms

The harm that Levy will suffer if I grant TMS's motion is clearly outweighed by the harm to TMS if I deny the motion. Only twenty-five out of TMS's 350 employees have non-compete agreements and TMS spends a large amount of money training these supervisory employees. These employees are its most highly-trained. The vast majority of TMS's workforce comprised of hourly employees, who are not subject to non-compete agreements and whom Levy may freely hire.

## 3. Likelihood of Success on the Merits

TMS has demonstrated it is likely to succeed on the merits. Although it is not clear whether TMS will prevail on its unfair competition or civil conspiracy claim, it is likely to succeed on its claim for tortious interference with contract. *See United Health Care Ins. Co.*

*v. Advance PCS*, 316 F.3d 737, 742–43 (8th Cir. 2002) (moving party need only show likelihood of success on a single cause of action, not every action it asserts in its complaint).

To prove tortious interference, TMS must show (1) the existence of a valid contractual relationship or business expectancy; (2) Levy's knowledge of the relationship or expectancy; (3) Levy's intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) damages. *See Skalla v. Canepari*, 430 S.W.3d 72, 81 (Ark. 2013). Pennsylvania law essentially mirrors the Arkansas elements. *See Walnut Street Associates, Inc. v. Brokerage Concepts, Inc.*, 982 A.2d 94, 98 (Pa. Super. Ct. 2009) (also requiring that Levy interfere without privilege or justification).

First, TMS's non-compete provisions are likely enforceable. This is true because, based on Arkansas and Pennsylvania law, there is a "fair chance" that the non-compete agreements TMS entered with its employees are reasonable and enforceable. *See Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003) (moving party must show a "fair chance" of success, not a mathematical probability); *Cigna Corp v. Bricker*, 103 F.4th 1336, 1344–45 (8th Cir. 2024) (moving party only required to show a "fair chance" that its non-compete agreement is enforceable). Indeed, if TMS had brought its claims against the former employees sooner, its claim of irreparable harm would have been much stronger and I probably would have granted its request for injunctive relief against them. As the record presently exists, it appears that Levy has deliberately and unjustifiably disregarded the contractual obligations Stevenson, Metheny, and Kimery had with TMS. TMS sent Levy multiple cease-and-desist letters explaining that its former employees were in violation of

their non-compete agreements by working for Levy, and requesting that Levy immediately cease employing obligated TMS employees. Levy essentially ignored these letters. Moreover, TMS's Vice President of Operations testified that Levy employees have been spotted numerous times in TMS's private break room soliciting TMS employees, and that Levy notified a mutual customer that TMS was suing it. TMS has also reasonably alleged damages.

*4. Public Interest*

Finally, an injunction is in the public's interest. The public has an interest in the enforcement of fairly-negotiated business agreements, and Levy may hire employees that are not subject to non-compete agreements. If Levy continues to hire TMS employees who are subject to non-compete agreements, it is likely to substantially harm TMS's ability to conduct business.

C.   <u>Enforceability of Non-Compete Clauses</u>

TMS's request for a declaration that the restrictive covenants contained in the employee contracts entered with Stevenson, Metheny, and Kimery are valid and enforceable is denied because this is a merits determination outside the scope of a preliminary injunction request. *See Dataphase Sys., Inc.*, 640 F.2d at 1025 (purpose of preliminary injunction is to preserve the status quo until the merits are determined). A ruling on this issue will be made afer trial.

IV.   CONCLUSION

For these reasons, TMS's amended motion for a preliminary injunction is denied on

its request to prevent Stevenson, Metheny, and Kimery from working at Levy, soliciting TMS employees, or violating their nondisclosure agreements. TMS's amended motion is also denied on its request for a declaration that the restrictive covenants contained in the contracts it entered with Stevenson, Metheny, and Kimery are valid and enforceable. TMS's amended motion is granted on its request to enjoin Levy from soliciting TMS employees that have non-compete agreements, and Levy is enjoined from employing any former TMS employees having non-compete agreements within one year of their separation from TMS.

    IT IS SO ORDERED this 2nd day of February, 2026.

_____
UNITED STATES DISTRICT JUDGE